UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETSY AMY BLANCO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:21-cv-00028-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 24)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.      Introduction**

Plaintiff Betsy Amy Blanco seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs.[1] Docs. 24, 25. After reviewing the record the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision that Plaintiff was not disabled. Accordingly, the undersigned recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**II.     Factual and Procedural Background[2]**

On April 23, 2018 Plaintiff applied for supplemental security income. The Commissioner denied the application initially on September 13, 2018 and on reconsideration on December 4, 2018. A hearing was held before an Administrative Law Judge (the "ALJ") on June 23, 2020. AR 52–85. On July 24, 2020 the ALJ issued an unfavorable decision. AR 12–38. The Appeals Council

---

[1] The parties did not consent to jurisdiction of a Magistrate Judge. *See* Docs 12, 14. Accordingly, the matter was assigned to "Unassigned District Judge," and ultimately reassigned to District Judge Jennifer Thurston. Doc. 22

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

denied review on November 23, 2020.  AR 1–6.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-

2

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of April 23, 2018. AR 17. At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; obesity; anxiety and depression. AR 17–18. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: vitamin D deficiency and vertigo. AR 18. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18–20.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following additional restrictions: occasional climbing; occasional postural activities; no exposure to extreme cold or dampness; simple and routine tasks. AR 20–29.

At step four the ALJ concluded that Plaintiff had no past relevant work. AR 29. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs

existing in significant numbers in the national economy, namely: cleaner; laundry worker; and mail clerk. AR 30–31. Accordingly, the ALJ concluded that Plaintiff was not disabled since her application date of April 23, 2018. AR 31.

## V.  Issues Presented

Plaintiff asserts two claims of error, though they will be addressed in a different order than presented: 1) The ALJ erred by failing to find that the records submitted to the Appeals Council directly contradict the ALJ's findings and might change the outcome of the administrative decision; and, 2) the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for rejecting her subjective complaints. Br. at 1–2, Doc. 19.

### A.  The Supportability of the RFC and the ALJ's Rejection of Plaintiff's Subjective Complaints

#### 1.  Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other

evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

**2.      Analysis**

Plaintiff's argument spans about 1.5 pages of text which, excluding the statements of law, consists of the following assertions:

> The ALJ conceded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR. 22. However, the ALJ failed to set forth any clear and convincing reason for discounting Plaintiff's symptoms, or identify evidence that was inconsistent with her complaints.
> In assessing Plaintiff's symptoms, the ALJ vaguely concluded that Plaintiff's statements and alleged limitations are inconsistent with the evidence of

5

> record. AR 22. However, the ALJ's overall summary of evidence fails to state a basis for discounting Plaintiff's alleged pain and symptoms.
> . . .
> Further, it is problematic that the ALJ failed to indicate which of Plaintiff's allegations are not supported by objective findings.
> . . .
> While the ALJ summarized Plaintiff's treatment history and objective findings, he failed to explain why any of these facts contradict Plaintiff's alleged symptoms and limitations. Ar. 22-29.

Br. at 16-17 (internal citations and quotations omitted).

No controlling authority requires the ALJ to match each allegation being rejected to the evidence that purportedly undermines it.  Plaintiff's discussion offers little more than a generalized critique of the ALJs opinion writing template with no engagement with its substance.  Further, the critique is equally applicable to Plaintiff's overall argument which does not explain which allegations are supported by which objective findings, and what restrictions should result beyond those already included in the RFC.

Plaintiff's discussion is not  sufficient to establish any independent error committed by the ALJ with respect to Plaintiff's subjective complaints. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."); *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted); *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

As to the supportability of the RFC generally, Plaintiff provided more pertinent discussion in the section addressing her other argument as discussed below.

### B.     The Appeals Council Decision in light of the Record

#### 1.     Applicable Law

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case.  20 C.F.R. § 416.1435(a).  The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5).  Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" that the new evidence would have changed the outcome.  20 C.F.R. § 404.970; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

#### 2.     Analysis

The Appeals Council declined to exhibit 13 pages of new evidence Plaintiff submitted after the hearing regarding her cervical spine surgery.  AR 39–51.  Plaintiff contends this evidence directly contradicts the ALJ's findings.

The first page in question is the cover letter from Plaintiff's counsel.  AR 39.  The second page is a Neurosurgery Discharge Summary which notes that Plaintiff was admitted on May 28, 2020 and underwent C4 through C7 diskectomy and fusion.  AR 40.  It further states that she tolerated the procedure well and was discharged home the next day with improved neurological function.  AR 40.  This is the only statement in the 13 pages in question of any apparent relevance to Plaintiff's functionality (albeit generalized relevance), and it does not contradict or undermine any of the ALJ's findings.

The next 10 pages (AR 41-50) contained the operative reports providing detailed, highly technical descriptions of each stage of the surgery performed. *See, e.g.* AR 43 ("platysma muscle layers were dissected free utilizing the needlepoint Bovie cautery . . . followed by curettes and straight pituitary rongeurs."); AR 44 ("The decompressive foraminotomies were carried out bilaterally utilizing the 2 and 3 mm Kerrison punches."). These records do not directly or indirectly contradict or undermine any of the ALJ findings. They have no apparent relevance to Plaintiff's functionality. The final page is a duplicate of Plaintiff's March 5, 2020 cervical MRI report (AR 51) which was already in the record (AR 1298).

Plaintiff contends, "The Appeals Council erred in finding that the evidence would not have impacted the case outcome because the residual functional capacity failed to include limitations from Plaintiff's cervical impairments." The omission of appropriate limitations from the RFC is an error of independent significance, one having little or nothing to do with the content of the records described above.

Plaintiff's discussion then shifts focus to a critique of the ALJ's reliance on Dr. Van Kirk's consultative examining opinion rendered on August 19, 2018 (AR 1201), an opinion which Plaintiff asserts did not consider cervical spine impairments and allegedly predated worsening of her cervical and lumbar spine impairment as evidenced by March 5, 2020 cervical spine MRI (AR 1296–97) and lumbar spine MRI (AR 1298-1299). Reliance on the allegedly outdated opinion of Dr. Van Kirk is also an issue of independent significance having again little or nothing to do with the Appeals Councils decision not to admit the 13 pages in question.

Without transition the discussion again shifts briefly to an April 7, 2020 visit for knee pain (AR 1485). The discussion of an unrelated impairment, such as her knee is out of place, has no apparent relevance to her argument that the case should be remanded for the ALJ to consider the new evidence submitted to the Appeals Council, all of which concern her cervical spine. The

hearing transcript reflects the ALJ admitted everything through Exhibit 51F (AR 58-59), whereas the knee examination within Exhibit 52F (AR 1487) was apparently admitted post-hearing by the ALJ who did discuss the knee examination and associated imaging. AR 25. Separate consideration is given below to the records concerning Plaintiff's knee and the ALJ's discussion of same.

Plaintiff's discussion then pivots again to a neurosurgery treatment note dated May 5, 2020 documenting her history of neck pain, abnormal examination, associated diagnosis, cervical MRI findings, and surgical recommendation of discectomy and fusion. AR 1467. These records were already in the record admitted by the ALJ at the hearing along with all of the original exhibits. Further, the ALJ did discuss that examination. AR 25. Separate consideration is likewise given below to the ALJ's discussion of those records.

In sum, the new evidence submitted to the Appeals Council demonstrate only that the cervical spine surgery did in fact take place. The ALJ was aware that this surgery had been recommended. *Id.* The Appeals Council properly concluded that there was no reasonable probability that those records would change the outcome.

### C. **The ALJ's Decision**

Though seemingly out of place within the organizational structure of Plaintiff's brief, separate consideration is given to Plaintiff's contentions that the ALJ erred in adopting the August 2018 opinion of Dr. Van Kirk despite later dated records allegedly demonstrating worsening of her lumbar and cervical spine impairments. Additional consideration is also briefly given to the records concerning Plaintiff's knee.

Plaintiff describes the records concerning here knee as follows:

A treatment record from Chioma Onyejekwe, NP, dated April 7, 2020, documents Ms. Blanco was seen for left knee sharp pain for two weeks. (AR 1485). Document tenderness and edema present, and she was limping and unable to bear weight on the left leg. (AR 1486). Ms. Blanco was treated with a Ketorolac injection, and she was referred for an x-ray of the left knee. (AR 1486).

The ALJ discussed the examination of Plaintiff's knee and complaint of knee pain though the ALJ did not acknowledge the edema and weight bearing difficulty as noted by Dr. Onyejekwe. AR 25. Nevertheless, the x-ray impression noted no abnormality except for two screws noted at the tibial plateau but otherwise noted: no acute fracture; no effusion; no significant tibial deformity; no osteochondritis dissecans; no osteopenia or inflammatory arthritis; no degenerative narrowing or spurring; patella tracks in the midline. AR 1521. The ALJ reasonably found no knee impairment, severe or otherwise, a finding which Plaintiff does not overtly challenge. Further, Plaintiff identifies no other evidence, objective or otherwise, concerning her knee that would suggest the existence of any such impairment or functional limitations beyond what the ALJ already included in the RFC, namely light exertional work with no more than occasional kneeling, stooping, and crouching. As such, there is no basis to find the ALJ committed any harmful error with respect to Plaintiff's knee.

### 1. **Lumbar and Cervical Spine**

#### a. **Lumbar Spine**

Plaintiff also contends her lumbar spine impairment worsened following Dr. Van Kirk's examination in August 2018, undermining the ALJ's reliance on Dr. Van Kirk's opinion in formulating the RFC. Br. at 1. Plaintiff attempts to substantiate that assertion with a description of Plaintiff's March 5, 2020 lumbar spine MRI documenting L3-4 moderate intervertebral disc desiccation, disc narrowing, and proximal left foraminal bulge of the annulus disc protrusion; L5-S1 moderate intervertebral disc desiccation and disc narrowing. AR 1296–97. However, the March 5, 2020 lumbar spine MRI also noted no neural foraminal stenosis at any level. *Id.*

Two previous lumbar spine MRIs on September 5, 2017 and February 24, 2018 noted comparable findings of disc bulges at multiple levels similar to the March 5, 2020 MRI. AR 1173. These also noted mild to moderate foraminal and spinal canal stenosis whereas the 2020 MRI noted

neither.  AR 1173, 1174.  Thus, the March 2020 MRI results do not suggest her lumbar spine impairments worsened with time, and the opposite contention is equally plausible.

As for the physical examinations of Plaintiff's lumbar spine, Dr. Van Kirk noted restricted range of motion and accordingly opined she could lift 10 pounds frequently, lift 20 pounds occasionally, and could occasionally perform postural activities.  AR 1200-1201.  But the examination was otherwise unremarkable with normal gait, negative straight leg raise, normal motor strength, and normal lower extremity strength.

She was then evaluated on May 5, 2020 by Dr. Perry, the same examination Plaintiff relies on to support the contention that her cervical impairment worsened following Dr. Van Kirk's examination.  AR 1465–67.  Although the stated purpose of the visit was to "provide neurosurgical recommendations for management of the patient's cervical degenerative disk and spine disease," (AR 1465) the examination was conducted the same day as both her cervical and lumbar spine MRIs, and Dr. Perry did provide examination findings for the both the cervical and lumbar spine.  Despite various abnormalities related to her cervical spine, Dr. Perry noted "low back: no pain, spasms, or bony abnormalities."  AR 1466.  Bilateral lower extremities demonstrated normal bulk with 5/5 strength throughout, normal range of motion in all lower extremity joints, normal toe and heel walk, normal gait, normal station.  *Id.*

Thus, this examination does not corroborate Plaintiff's contention that her lumbar spine impairment worsened following Dr. Van Kirk's August 2018 examination.  Plaintiff cites no other pertinent physical examinations after that date, and there do not appear to be any in the record.  Plaintiff has not established that the ALJ committed any error in adopting Dr. Van Kirk's opinion as to the limitations attributable to Plaintiff's low back pain and restricted range of motion, namely light exertional work with occasional postural activities.

### b. **Cervical Spine**

Plaintiff also contends the ALJ erred in relying on Dr. Van Kirk's opinion because Dr. Van Kirk did not consider the cervical spine impairment or assessing any related limitations, and because her cervical spine impairment worsened after his examination. Br. at 14. Dr. Van Kirk noted among chief complaints "neck pain with radiation down both arms." AR 1198. Dr. Van Kirk noted her 1.5 year history of neck pain which increases if she repetitively flexes and extends the neck, reaches overhead, pushes, pulls, performs rotary motions of the upper extremities or heavy lifting. AR 1198. He further noted that she reported her neck pain and back limits her activities and she does nothing independently but showering, eating, and watching TV. *Id.* Thus, Dr. Van Kirk did consider her cervical spine symptoms though he had no associated records and did not render a diagnosis related to her cervical spine.

Dr. Van Kirk also performed an associated examination which was benign. He noted she had slight pain in her mid-cervical spine area but that she slowly got through a full range of motion in her cervical spine. AR 1200. He found full range of motion in bilateral shoulders, elbows, wrists, and fingers, without pain or difficulty, full motor strength in her upper extremities, full grip strength and normal sensation. AR 1200. Thus, he did consider her cervical spine impairment and performed an associated examination.

As to Plaintiff's contention that her cervical spine impairment worsened following Dr. Van Kirk's August 2018 examination, that is not necessarily borne out by Plaintiff's citation to the MRI results alone, considering the MRIs in May 2018 and March 2020 described similar abnormalities, most concerningly central canal stenosis. AR 1194-1195; AR 1298-1299.

Nevertheless, the presence of ongoing and untreated spinal cord compression could potentially result in neurological deterioration despite there being no worsening of the MRI pathology itself, such that Dr. Van Kirk's August 2018 neurological exam was relatively normal,

12

which was not the case in May 2020 (see below).

By way of background, Plaintiff reported cervical radicular symptoms including pain, numbness, and weakness beginning early 2017 including emergency department visits in May 2017 (AR 943) and February 2018 (AR 1157). MRI in May 2018 first revealed central canal stenosis with "significant spinal cord flattening" (AR 1195). Interestingly, she was not referred for immediate surgical evaluation. Despite normal neurological exam by Dr. Van Kirk in August 2018, the May 5, 2020 neurological exam revealed sufficiently significant neurological abnormalities that surgery was scheduled and performed three weeks later.

The ALJ's discussion of these records was deficient in several respects. The ALJ noted some, but not all of the abnormalities from the May 5, 2020 examination. The ALJ seemingly minimized the significance of the underlying MRI pathology. Further, the ALJ subsequently reached conclusions in his discussion of the opinion evidence which were belied by the May 5, 2020 examination and surgical recommendation. The ALJ provided the following pertinent discussion:

> The claimant continued to receive treatment for her neck and back and fortunately, a March of 2020 lumbar spine MRI indicated no degenerative changes, no herniated disc, no canal, neural foraminal or nerve root compromise (Exhibit 42F, p. 2). An associative cervical spine MRI from March of 2020 also showed central canal stenosis at C4-5 and C5-6 and foraminal stenosis at these levels, *which is from osseous hypertrophic change* (Exhibit 42F, p. 4).
>
> In May of 2020, the claimant was evaluated to provide neurosurgical recommendations related to her cervical degenerative disc and spine disease, as the claimant continued to report numbness, tingling, weakness, imbalance, and difficulty with gait and walking. Upon physical examination, she demonstrated tenderness and decreased range of motion about her cervical spine, but no pain, spasm, or bony abnormalities about her back. She had normal bulk and tone, a decreased range of motion with her bilateral shoulders and reduced reflexes in her upper extremities. However, she exhibited a normal gait, normal tandem and normal station (Exhibit 51F, pp. 2-3). The claimant was diagnosed with neck pain, degeneration of cervical intervertebral disc, cervical spondylosis with radiculopathy and myelopathy and spinal stenosis in cervical region. The presenting physician recommended surgical intervention consisting of C4-5, C5-6 and C6-7 anterior cervical discectomy and fusion.

AR 25 (emphasis added)

Mildly concerning at the outset is the ALJ's characterization of the follow up lumbar spine MRI result as "fortunate" within the context of Plaintiff's continued spine workup, and mentioned the cervical MRI results as somewhat of a footnote despite the continued presence of central canal stenosis at C4-C6, initially discovered 18 months earlier.

Further, the ALJ's characterization of the MRI results was not entirely balanced. It is notable that the ALJ's characterization of the cervical MRI was an almost verbatim recitation of the radiologist's final impression with one exception. The impression stated as follows:

> Central Canal Stenosis at C4-C5 and C5-C6 and foraminal stenosis at these levels. This is from osseous hypertrophic change, *and likely accounts for patients symptoms.*

AR 1298 (emphasis added)

Importantly, the ALJ omitted the italicized portion from his discussion. Further, despite a fairly comprehensive description of the pertinent normal and abnormal examination findings alike (tenderness, reduced cervical range, normal muscle bulk, normal muscle tone, reduced shoulder ROM, reduced upper extremity reflexes, normal gait, normal tandem, normal reflexes), the ALJ omitted any discussion of muscle strength grading. That discussion is not easily overlooked considering Dr. Perry's description of the muscle strength grading occupies the majority of the text in the "motor exam section" as he set forth the strength grades individually, which were nearly universally 5/5 in her lower extremities (consistent with benign lumbar pathology), but nearly universally 4/5 in her upper extremities including: shoulder abduction 4/5, internal rotation 4/5, external rotation 4/5, elbow pronation 4/5, wrist flexion 4/5, wrist extension 4/5, hand grip 4/5. AR 1467. That omission is concerning given those results are in tension with some of the ALJ's subsequent findings.

In subsequently discussing the RFC formulated by Dr. Bobba on reconsideration, the ALJ

14

accepted and adopted the restriction to light exertional work with occasional postural activities, but rejected the upper extremity restriction to occasional overhead reaching, finding that restriction unsupported by the longitudinal record:

> The undersigned concludes these opinions are partially persuasive, as the exertional and occasional posturals are supported *by the longitudinal record*, but the *upper extremities restrictions are not*. Additionally, this opinion is based upon the then existing record and *is not contradicted by subsequent records* For example, the claimant wore bilateral lower arm braces due to alleged muscle spasm of her shoulder region (Exhibit 8A, p. 9), but initial physical examinations showed only "mild" tenderness and a mildly reduced range of motion about her shoulder (Exhibit 5F, p. 4). Fortunately, *by June of 2014*, the claimant demonstrated a full range of motion of the shoulder without crepitus, no swelling, no increased warmth, neurovascular and tendons intact (Exhibit 5F, p. 14). Additionally, objective imaging was negative (Exhibit 5F, pp. 4 and 7), *thereby evidencing a lack of support related to upper extremity limitations.*

AR 25-26. Despite leading with a conclusion about the longitudinal record, the ALJ relied on June 2014 imaging and examination of the shoulder joint to refute the existence of upper extremity limitations, troubling considering the relevant period here did not begin until the application date of April 23, 2018. As discussed above, the May 5, 2020 examination did reflect decreased shoulder ROM (as the ALJ noted) and reduced strength 4/5 in shoulder abduction, internal rotation, and external rotation, deficiencies Dr. Perry attributed not to the shoulder joint itself but to the cervical spine. AR 1467.

Granted, as Defendant emphasizes, in formulating the RFC the ALJ relied not only on Dr. Van Kirk's examination and associated opinion, but also Plaintiff's admitted activities of daily living including her ability to: "independently bathe (Hearing Transcript), do the laundry (Exhibit 4E, pp. 2-3), grocery shop, clean her room, and drive to church (Exhibit 9E, p. 2)." AR 26. Notably, the two function reports noting laundry, grocery shopping, cleaning, and driving were dated May 2018 and July 2018, around the same time as Dr. Van Kirk's examination in August 2018. On balance, substantial evidence supports no additional restrictions (related to the cervical spine, or otherwise) through the date of Dr. Van Kirk's August 19, 2018 examination. But that does not

undermine the significance Dr. Perry's May 5, 2020 examination noting neurological deficiencies including upper extremity weakness resulting in a recommendation for surgery.

Although the abnormalities noted on Dr. Perry's exam do not self-evidently support more stringent restrictions than the RFC included here, the weakness on exam in bilateral upper extremities corroborated Plaintiff's complaints of weakness, which are supported by the radiologist's notation that the MRI results likely account for the patients symptoms (as opposed to "incidental" findings).  The ALJ did not acknowledge either of these facts.

It is not sufficient here to rely on the principle that affirmance is appropriate where the evidence could support more than one conclusion. This case presents an unusual situation where the claimant underwent major spine surgery to correct progressive cervical myelopathy 2 months before the ALJ's decision was rendered, and about 1 month before the hearing on June 23, 2020.

Though Dr. Van Kirk's August 2018 consultative examination and associate opinion supported the RFC as to Plaintiff's functionality around that time (as did the cited activities of daily living from her two exertional questionnaires completed around that time), the ALJ's omissions with respect to the March 5, 2020 cervical MRI and May 5, 2020 neurological examination render the RFC determination unsupported by substantial evidence.

Importantly, the ALJ did reach a conclusion about Plaintiff's functionality through the date of the decision on July 24, 2020, meaning any subsequent application for disability benefits based on Plaintiff's functional status on or around the date of her surgery would, at least to some extent, face the *Chavez* presumption of continuing non-disability.  *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  Given the significance of the developments so close in time to the hearing and the ALJ's decision, in the undersigned's opinion it was imperative that the ALJ's decision not under value those late developments concerning the cervical spine, while rendering a decision largely in reliance on evidence from 2-6 years earlier.

The Ninth Circuit has recently suggested ALJs should give consideration to how a claimant's condition changes over time, and whether such changes support a finding of disability for a shorter period of time even if not for the entire relevant period under review:

> The ALJ's conclusion that Smith was not disabled at the time of the hearing was supported by substantial evidence. But the court nonetheless reverses and remands this case to the agency for further factfinding, since the ALJ did not adequately consider how Smith's symptoms changed over time. The ALJ's failure to consider these changes over time impacted both her assessment of Smith's credibility and her analysis of the medical opinions. As explained further below, the ALJ shall consider on remand whether Smith was disabled, and therefore entitled to benefits, for some qualifying, earlier portion of his alleged disability period.

*See Smith v. Kijakazi*, 14 F.4th 1108, 1110 (9th Cir. 2021)

Remand is appropriate for the ALJ to accurately discuss the developments beginning with the March 5, 2020 cervical MRI through the date of the ALJ's decision and reach a well-reasoned conclusion about the impact on Plaintiff's functional status in the months leading up to the surgery and thereafter. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### VI. <u>Conclusion</u>

For the reasons stated above, the undersigned recommends that the Court find that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled, and that the Clerk of Court be directed to enter judgment in favor of Plaintiff Betsy Amy Blanco and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

### VII. <u>Objections Due within 14 Days</u>

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  **June 1, 2023**               /s/ Gary S. Austin
                                       UNITED STATES MAGISTRATE JUDGE